**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

Netsoft USA, Inc.,

        Plaintiff,

-against-

Incremax Technologies Corporation,
Kerry Gerontianos and Louis Giuffre

        Defendants.

_____ CV _____

**COMPLAINT**



**'06 CIV 14348**

**Judge McMahon**

Plaintiff, Netsoft USA, Inc. ("Netsoft" or "Plaintiff"), by and through its undersigned

attorneys, Greenwald Doherty LLP, brings this Complaint against Defendant Incremax

Technologies Corporation ("Defendant Incremax"), Defendant Kerry Gerontianos ("Defendant

Gerontianos"), and Defendant Louis Giuffre ("Defendant Giuffre) (collectively, "Defendants"),

alleging as follows:

## NATURE OF ACTION

1.      This is an action for monetary damages and permanent injunctive relief to redress

injuries that will and have been suffered by Plaintiff as a result of Defendants' theft of Plaintiff's

intellectual property by unlawfully accessing Plaintiff's protected computers in violation of 18

U.S.C. 1030, et. seq. (the "Computer Fraud and Abuse Act"), misappropriation of trade secrets

and other intellectual property, conversion of intellectual property, unfair competition, breach of

contract, tortious interference with contract, tortious interference with Plaintiff's prospective

economic advantages, and breach of fiduciary duties, including the duty of loyalty.    Further,

Defendants have conspired and acted in concert to commit the aforementioned business torts,

and, using the wires, engaged in a scheme to defraud Plaintiff of Plaintiff's property constituting

a pattern of racketeering activity in violation of 18 U.S.C. §1961, et. seq. (RICO).

## JURISDICTION AND VENUE

2.    This Court has jurisdiction over the subject matter of this action pursuant to 28 USC § 1331, 18 U.S.C. § 1030 (g) and 18 U.S.C. § 1964 (a) and (c).

3.    This Court has supplemental jurisdiction over the state law causes of action pursuant to 28 USC § 1367.

4.    Venue properly lies in the Southern District of New York located in New York County pursuant to 28 U.S.C. § 1391.

## PARTIES

5.    Plaintiff is a corporation organized under the laws of the State of New York and has a principal place of business in New York County, New York.

6.    Plaintiff is in the business of providing information technology ("IT") consulting services in the area of IT application development, infrastructure development, e-commerce and knowledge management for companies that use Microsoft computer systems.  Plaintiff is a Microsoft Certified Partner, and a member of the International Association of Microsoft Certified Partners (IAMCP).

7.    Defendant Incremax, upon information and belief, is a corporation organized under the laws of the State of New York and has a principal place of business in New York County, New York.

8.    Defendant Incremax, upon information and belief, is, like Plaintiff, in the business of providing information technology ("IT") consulting services in the area of IT application development, infrastructure development, e-commerce and knowledge management for companies that use Microsoft computer systems.  Like Plaintiff, Defendant Incremax is a Microsoft Certified Partner, and a member of the IAMCP.

2

9.    Defendant Gerontianos is a person, who, upon information and belief, resides in New York County, New York. Defendant Gerontianos is, and at all times relevant herein was, the President of Defendant Incremax.

10.    Defendant Giuffre is a person, who, upon information and belief, resides in Suffolk County, New York. From on or about August 8, 2005 through July 10, 2006, Defendant Giuffre was employed by Plaintiff as Plaintiff's Senior Sales Representative. Upon information and belief, Defendant Giuffre became an employee of Defendant Incremax shortly before or after the termination of his employment with Plaintiff.

## STATEMENT OF FACTS

### Defendant Giuffre's Contractual Obligations to Plaintiff

11.    Louis Giuffre was hired as a Senior Sales Representative effective August 8, 2005. In that capacity, Defendant Giuffre was responsible for obtaining new clients and selling additional consulting services to existing clients. In his position as a Senior Sales Representative, Defendant Giuffre had access to Netsoft's proprietary business information as well as the computer systems on which that information was electronically stored.

12.    On or about August 8, 2005, in consideration for his employment with Plaintiff, Defendant Giuffre signed and entered into an Employment Agreement, which Defendant Giuffre signed and dated on August 8, 2006 (the "Employment Agreement"). The Employment Agreement contains restrictive covenants, including covenants not to compete with Plaintiff, not to solicit clients or employees of Plaintiff, and not to disclose Plaintiff's confidential and proprietary business information, including Plaintiff's trade secrets (collectively, the "restrictive covenants").

13.    Under the terms of the Employment Agreement, Defendant Giuffre agreed that during his employment with Plaintiff, and for a period of one (1) year thereafter, Defendant

3

Giuffre would protect and not disclose Plaintiff's confidential and proprietary business information and trade secrets as follows:

> "Employee shall not, directly or indirectly, through any form of ownership, in any individual or representative or affiliated capacity whatsoever, except as may be required by law, reveal, divulge, disclose or communicate to any person, firm, association, corporation or other entity in any manner whatsoever information of any kind, nature or description concerning: (i) the names of any prior or present suppliers or customers of the Company, (ii) the prices for which the Company obtains or has obtained products or services, (iii) the names of the personnel of the Company, (iv) the manner of operation of the Company, (v) the plans, trade secrets, or other confidential or proprietary data of any kind, nature or description, whether tangible or intangible, of the Company, or (vi) any other financial, statistical or other information that the Company designates or treats as confidential or proprietary."

14.    Under the terms of the Employment Agreement, Defendant Giuffre agreed that during his employment with Plaintiff, and for a period of one (1) year thereafter, Defendant Giuffre would refrain from soliciting Plaintiff's clients and potential clients, soliciting Plaintiff's employees, diverting business away from Plaintiff and otherwise competing against Plaintiff as follows:

> "Employee agrees that during the Employment Period, and for a period of one (1) year from the date of termination of this Agreement, Employee shall not:
>
> (i)    Call upon, solicit, divert, take away or attempt to call upon, solicit, divert or take away any past, existing or potential customers, suppliers, businesses, or accounts of the Company or with any business substantially similar to the Company within a fifty (50) mile radius of any office of the Company (herein the "Territory");
>
> (ii)    Hire, attempt to hire, contact or solicit with respect to hiring for Employee, or on behalf of any other person any present or future employee of the Company;
>
> (iii)    Engage in, or give any advice to any person, firm, partnership, association, venture, corporation or other entity engaged in a business substantially similar to the Company in the Territory;
>
> (iv)    Lend credit, money or reputation for the purpose of establishing or operating a business substantially similar to the Company in the Territory;

4

(v)     Do any act that Employee knew or reasonably should have known might injure the Company; and

(vi)     Without limiting the generality of the foregoing provisions, conduct a business substantially similar to the Company, whether or not under the name "Netsoft USA" or any other trade names, trademarks or service marks used by the Company in the Territory.

The covenants in subsections (i) through (vi) are intended to restrict Employee from competing in any manner with the Company in the activities that have heretofore been carried on by the Company. The obligations set forth in subsections (i) through (vi) above shall apply to actions by Employee, through any form of ownership, and whether as principal, officer, director, agent, employee, employer, consultant or in any other individual or representative or affiliated capacity whatsoever."

15.     On or about July 11, 2006, after the termination of Defendant Giuffre's employment with Plaintiff, Defendant Giuffre signed a Separation Agreement that included a specific, express reminder and reaffirmation of Mr. Giuffre's obligations under the restrictive covenants of his Employment Agreement as follows:

"We remind you of your continuing obligation under your employment agreement not to disclose to others any information regarding Netsoft USA, Inc.'s practices, procedures, trade secrets, customer lists, or product marketing. You also agree not to disclose to others the terms of this Separation Agreement, the benefit being paid under it or the fact of its payment; provided, however, that you may disclose the terms of this Separation Agreement to your spouse, attorney, accountant or other professional advisor to whom you must make the disclosure in order for them to render professional services to you. You will instruct them, however, to maintain the confidentiality of this information just as you must.

We remind you of your continuing obligations under your employment agreement, for a period of one year after the termination of your employment, (a) not to solicit or divert any customers of Netsoft USA, Inc., and (b) not to compete in any geographic region in which Netsoft USA, Inc. engaged in business during the term of your employment.

In the event that you breach any of your obligations under this Separation Agreement or as otherwise imposed by law, Netsoft USA, Inc. will be entitled obtain all relief provided by law or equity."

16.    The purpose of these contract provisions was and is to protect Plaintiff's valuable trade secrets, confidential and proprietary business information, customer relationships and customer goodwill, in which it has invested considerable time, money and effort.

<u>Defendants' Tortious and Unlawful Conduct</u>

17.    Commencing in at least February 2006, Defendant Giuffre, in concert with the other defendants, while still an employee of Plaintiff, engaged in a series of disloyal activities in violation of his contractual and other duties to Plaintiff involving, among other things, diverting business away from his employer, referring business to his employer's competitor (Defendants Incremax and Gerontianos) that would have otherwise been obtained by Plaintiff, encouraging Plaintiff's employees to terminate their employment with Plaintiff and become employed by Defendants Incremax and Gerontianos, and fraudulently disseminating Plaintiff's confidential and proprietary business information and trade secrets to Defendants Incremax and Gerontianos.

18.    Specifically, in or about mid-June 2006, Defendant Giuffre asked his then administrative assistant (the "Assistant"), who was also an employee of Plaintiff, to schedule a meeting with him (Defendant Giuffre) and Defendant Gerontianos. The scheduled meeting took place on or about June 29, 2006.  The Assistant attended the meeting, at which Defendant Giuffre discussed his (Defendant Giuffre's) plan to go to work for Defendant Incremax.

19.    Upon information and belief, at this same meeting, Defendant Giuffre and Defendant Gerontianos, invited the Assistant, who was also and employee of Plaintiff, to leave Plaintiff's employ and got to work for Defendants Incremax and Gerontianos.  Further, at that same meeting, upon information and belief, Defendant Giuffre requested that the Assistant make back up copies of Plaintiff's entire customer, sales and marketing information so that he could continue doing business with and provide services to Plaintiff's customers on behalf of

Defendant Incremax when he left Plaintiff's employ and began providing services for Defendant Incremax.

20.    Moreover, upon information and belief, from February 2006 through July 2006, while still employed by Plaintiff, Defendant Giuffre e-mailed to Defendants Incremax and Gerontianos numerous documents containing Plaintiff's confidential and proprietary confidential information and trade secrets.

21.    These documents and information include Plaintiff's most valuable trade secrets, and Plaintiff treated them as such. For example, very few employees were provided access to the wide array of documents and information as was Mr. Giuffre. Indeed, only the firm's partners and Mr. Giuffre had this amount of complete and virtually unfettered access. Further, this information was maintained on computers that are password protected, and on a server that is also, separately, password protected. Passwords are changed monthly, and include strict, complex password protocols (e.g., numbers of characters, mix of upper/lower case, numbers/letters combinations, etc.). Also, certain confidential information, such as sales proposals, presentations and pricing information is strictly protected with viewing access is limited to only certain designated users. The individuals with access to these highly confidential materials included only the three managing partners of the firm, and Defendant Giuffre. In addition, Plaintiff requires all employees to sign confidentiality agreements and maintains a well-disseminated, written confidentiality policy.

22.    Upon information and belief, among the many e-mails that Defendant Giuffre sent to Defendants Incremax and Gerontianos in order to misappropriate Plaintiff's trade secrets and fraudulently convey Plaintiff's confidential business information, was an email sent by Defendant Giuffre to Defendants Gerontianos and Incremax on June 25, 2006, in which Defendant Giuffre informed Defendants Incremax and Gerontianos that he (Defendant Giuffre)

was providing Defendants Incremax and Gerontianos with all of the "tools" Defendants Incremax and Gerontianos needed obtain a contract a certain prospective client. Plaintiff, at that same time, was also negotiating with that same prospective client to perform similar IT consulting services. In the e-mail, Defendant Giuffre further stated to Defendant Incremax and Gerontianos that with the documents he was attaching, he (Defendant Giuffre) was "arming" Defendants Incremax and Gerontianos "with whatever you need" to obtain the contract with the prospective client. Defendant Giuffre attached to this email, which he sent to the other defendants, a document containing confidential and proprietary business information and trade secrets

23.      Between June 25, 2006 and June 28, 2006, Defendant Giuffre sent at least four additional emails to Defendants Incremax and Gerontianos, which also attached documents that contained confidential and proprietary business information and trade secrets.

24.      Among the documents sent by Defendant Giuffre to Defendants Incremax and Gerontianos via these emails, include the following: Princeton BISOW, BI Requirements, Netsoft BI Assessment Survey, CMS Enhancements, CMS-IssuesTracker, CMS - IssuesTracker Issues, CMS-IssuesTracker Estimates, CMS-IssuesTracker Estimates #2, CMS Requirements. All of these documents are valuable, confidential and proprietary. Each of these documents was taken from Plaintiff's computer without authorization and represents valuable confidential business information and trade secrets of Plaintiff.

25.      Upon information and belief, each of the unlawful e-mails sent by Defendant Giuffre to Defendants Incremax and Gerontianos were sent by Defendant Giuffre from his personal e-mail account at Yahoo! Inc ("Yahoo") to Defendant Gerontianos at his work e-mail account at Defendant Incremax. Upon information and belief, in the ordinary course of

8

transmission, e-mails sent via Yahoo's e-mail service travel in interstate communication between the sender and the recipient.

26.    Upon information and belief, the contract for IT consulting work for this particular prospective client, for which both Plaintiff and Defendant Incremax were competing at that time, was won by Defendant Incremax, and not by Plaintiff.

27.    In or about mid-July 2006, Defendant Giuffre again asked the Assistant to back-up certain information and save it to disks, including all of the data on a laptop computer belonging to Plaintiff, which had been issued to Defendant Giuffre to perform his job duties (the "Laptop"). The Laptop contained substantial amounts of confidential and proprietary business information and trade secrets including documents containing information related to Plaintiff's production methods, business operations, sales and marketing strategies, pricing data, confidential customer and supplier related information, contracts with customers and suppliers, and confidential work product created for Plaintiff's customers,. Defendant Giuffre also asked the Assistant to provide him with a keycard (i.e., password) necessary to access certain confidential and proprietary business information and trade secrets.

28.    On or about July 13, 2006, without authorization from Plaintiff, Defendant Giuffre caused the Laptop to be delivered to the offices Defendants Incremax and Gerontianos. The data on the Laptop included confidential proprietary business information and trade secrets belonging to Plaintiff.

29.    On or about June 17, 2006 at approximately 5:10 p.m., Defendant Giuffre returned the Laptop to Plaintiff. At no time, did Defendant Giuffre disclose to Plaintiff that prior to returning the Laptop he had it brought to Defendant Incremax. Upon information and belief, the entire contents of the Laptop were copied on or about July 17, 2006, at approximately 12:40 p.m., i.e., about 4 hours before the Laptop was returned to Plaintiff.

9

30.    During and since his termination from Plaintiff's employ, Defendant Giuffre, in concert with Defendants Incremax and Gerontianos, has used and disclosed, and continues to use and disclose, Plaintiff's confidential and proprietary business information and trade secrets in knowing violation of Defendant Giuffre's contracts with Plaintiff, and in violation of Plaintiff's intellectual property rights.

31.    During and since his termination from Plaintiff's employ, Defendant Giuffre, in concert with Defendants Incremax and Gerontianos, has solicited and continues to solicit business from Plaintiff's customers using Plaintiff's confidential and proprietary business information and trade secrets and in violation of Defendant Giuffre's contracts with Plaintiff.

32.    During and since his termination from Plaintiff's employ, Defendant Giuffre, in concert with Defendants Incremax and Gerontianos, has diverted and continues to divert business and business opportunities from Plaintiff's customers using Plaintiff's confidential and proprietary business information and trade secrets and in violation of Defendant Giuffre's contracts with Plaintiff.

33.    During and since his termination from Plaintiff's employ, Defendant Giuffre, in concert with Defendants Incremax and Gerontianos, has solicited and continues to solicit employees of Plaintiff in violation of Defendant Giuffre's contracts with Plaintiff.

34.    Defendants actions have resulted in the loss of business in excess of $1,000,000.00.

## AND AS FOR A FIRST CAUSE OF ACTION
## UNAUTHORIZED COMPUTER ACCESS
(Against All Defendants)

35.    Plaintiff repeats and reassert each and every allegation contained in the preceding paragraphs with the same force and effect as if fully set forth at length herein.

36.    Plaintiff asserts this Count against all defendants, jointly and severally, pursuant to Section 1030 of the Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. § 1030.

37.    In or about June and July 2006, Defendant Giuffre, acting in concert with Defendant Incremax and Gerontianos, unlawfully, knowingly, and intentionally, in conduct involving interstate and foreign communications, accessed protected computers without authorization and exceeded authorized access, and thereby obtained information from such protected computers.

38.    Further, Defendants accessed computers owned and maintained by Plaintiff, obtained confidential and proprietary business information and trade secrets belonging to Plaintiff from those computers, and, via Defendant Giuffre's Yahoo! Inc. e-mail account, transmitted that proprietary business information and trade secrets to his co-conspirators, Defendants Incremax and Giuffre.

39.    Plaintiff has suffered damage or loss by reason of defendants' violation of the CFAA.

40.    By reason of the foregoing, Plaintiff is entitled to (1) equitable remedies including a permanent injunction, (2) compensatory damages in an amount to be determined at trial, (3) an award of punitive damages in an amount to be determined at trial, (4) an award of attorneys' fees and costs, and (5) such other relief as the Court may deem just and proper.

## AND AS FOR A SECOND CAUSE OF ACTION
## RICO
(Against All Defendants)

41.     Plaintiff repeats and reassert each and every allegation contained in the preceding paragraphs with the same force and effect as if fully set forth at length herein.

42.      Plaintiff asserts this Cause of Action against all defendants, jointly and severally, pursuant to Section 1962 and 1964 of the Racketeer Influenced Corrupt Organization Act ("RICO"), 18 U.S.C. §§ 1962 and 1964.

43.     Based on the foregoing, defendants, through the commission of two or more acts constituting a pattern of racketeering activity directly or indirectly participated in an enterprise the activities of which affect interstate or foreign commerce.

44.     Specifically, each of the aforementioned emails between June 25, 206 and June 28, 2006 in which Defendant Giuffre used the Internet to email to his co-conspirators, Defendants Incremax and Gerontianos, Plaintiffs confidential and proprietary business information and trade secrets, constitutes a predicate act of wire fraud in violation of 18 U.S.C. 1343.

45.     Defendants engaged in these predicate acts in the furtherance of their scheme to defraud Plaintiff of its confidential and proprietary business information and trade secrets, and a scheme to deprive Plaintiff of Plaintiff's confidential and proprietary business information and trade secrets by means of false or fraudulent pretenses, representations or promises, through use of interstate wires.

46.     Defendant Incremax is a legal entity and enterprise under RICO that benefited from the pattern of racketeering activity and scheme to defraud Plaintiffs.  Further, the confederation and conspiracy between and among all three defendants constitutes an association in fact that benefited from the pattern of racketeering activity and scheme to defraud Plaintiff

47.    By reason of the foregoing, Plaintiff is entitled to (1) equitable remedies including a permanent injunction, (2) compensatory damages in an amount to be determined at trial, (3) treble damages amounting to three times the compensatory damages, (4) an award of attorneys' fees and costs, and (5) such other relief as the Court may deem just and proper.

### AS AND FOR A THIRD CAUSE OF ACTION
### BREACH OF DUTY OF LOYALTY
(Against Defendant Giuffre)

48.    Plaintiff repeats and reasserts each and every allegation contained in the preceding paragraphs with the same force and effect as if fully set forth at length herein.

49.    Defendant Giuffre, while in the employ of Plaintiff, repeatedly and willfully failed to act in the best interest of his employer, and instead, acted in the best interests of Defendant Incremax, a direct competitor of Plaintiff, by diverting prospective business away from Plaintiff and referring said business to Defendants Gerontianos and Incremax, by encouraging Plaintiff's employees to leave Plaintiff's employ and become employed by Defendant Incremax, and by misappropriating and fraudulently conveying to others Plaintiff's confidential and proprietary business information and trade secrets.

50.    The acts described above constitute a breach by Plaintiff Giuffre of the fiduciary duty of loyalty he owed Plaintiff when in Plaintiff's employ.

51.    Defendant Giuffre's breach of his duty of loyalty has actually and proximately caused injury and damages to Plaintiff's business and business reputation.

52.    By reason of this breach of his duty of loyalty, Defendant Giuffre has caused and continues to cause significant monetary and other injury to Plaintiff

53.    Defendant Giuffre's tortious and egregious conduct was intended to wrongfully enrich Defendants and to deliberately and willfully injure Plaintiff in wanton disregard of

Plaintiff's rights and Defendant Giuffre's civil obligations. Plaintiff is, therefore, entitled to an award of punitive damages in an amount to be determined at trial.

54.    By reason of the foregoing, Plaintiff is entitled to (1) equitable remedies including a permanent injunction, (2) compensatory damages in an amount to be determined at trial, (3) an award of punitive damages in an amount to be determined at trial, (4) an award of attorneys' fees and costs, and (5) such other relief as the Court may deem just and proper.

### AND AS FOR A FOURTH CAUSE OF ACTION
### BREACH OF CONTRACT
(Against Defendant Giuffre)

55.    Plaintiff repeats and reassert each and every allegation contained in the preceding paragraphs with the same force and effect as if fully set forth at length herein.

56.    On or about August 8, 2005, Defendant Giuffre entered into and signed an Employment Agreement in exchange for good and sufficient consideration.

57.    Plaintiff continued Defendant Giuffre's at-will employment - which Plaintiff could have terminated at any time, for any reason – for almost one full year after execution of the Agreement.

58.    On or about July 11, 2006, Defendant Giuffre entered into and signed a Separation Agreement in exchange for good and sufficient consideration.

59.    These contracts included provisions restricting Defendants' employment and post-employment activities by prohibiting him, for a reasonable period of time, from competing with Plaintiff, soliciting Plaintiff's clients, potential clients or employees, and from disclosing confidential and proprietary business information and trade secrets.

60.    The Restrictive Covenants are reasonable to protect Plaintiff's legitimate business interests, including Plaintiff's goodwill, customer relationships and trade secrets and other confidential and proprietary business information.

61.     Defendant Giuffre's conduct as described herein constitutes a breach of each of the aforementioned contractual obligations to Plaintiff.

62.     By reason of the foregoing, Plaintiff is entitled to (1) equitable remedies including a permanent injunction, (2) compensatory damages in an amount to be determined at trial, (3) an award of punitive damages in an amount to be determined at trial, (4) an award of attorneys' fees and costs, and (5) such other relief as the Court may deem just and proper.

### AS AND FOR A FIFTH CAUSE OF ACTION
### TORTIOUS INTERFERENCE WITH CONTRACT
(Against Defendants Incremax and Gerontianos)

63.     Plaintiff repeats and reasserts each and every allegation contained in the preceding paragraphs with the same force and effect as if fully set forth at length herein.

64.     Defendants Incremax and Gerontianos were and are aware of the contracts that exist between Plaintiff and Defendant Giuffre.

65.     Defendants Incremax and Gerontianos have acted with malice and conscious disregard for Plaintiff's contractual rights and with the intent to frustrate and interfere with Plaintiff's contractual rights under its contracts with Defendant Giuffre.

66.     The acts described above constitute a tortuous interference by Defendant Incremax of Plaintiff's contractual relationship between it and Defendant Giuffre.

67.     By reason of the foregoing, Plaintiff is entitled to (1) equitable remedies including a permanent injunction, (2) compensatory damages in an amount to be determined at trial, (3) an award of punitive damages in an amount to be determined at trial, (4) an award of attorneys' fees and costs, and (5) such other relief as the Court may deem just and proper.

## AS AND FOR A SIXTH CAUSE OF ACTION
## TORTIOUS INTERFERENCE WITH PROSPECTIVE BUSINESS RELATIONS
(Against All Defendants)

68.     Plaintiff repeats and reassert each and every allegation contained in the preceding paragraphs with the same force and effect as if fully set forth at length herein.

69.     An advantageous business relationship exists between Plaintiff and its customers for whom it provides products and services.  These business relationships are sources of actual and potential revenue for Plaintiff.

70.     Plaintiff had a reasonable expectation of continuing its business relationships with its past, present and prospective customers and to gain and continue to gain the economic advantages of those business relationships.

71.     Plaintiff had a reasonable expectation of economic advantages that were lost as a direct result of Defendants' malicious interference.

72.     Defendants were and are aware of the business relationships that exist and existed between Plaintiff and each of its existing and prospective customers, as well as the nature and extent of Plaintiff's reliance on those relationships.

73.     Defendants have unlawfully interfered and continue to interfere with Plaintiff's advantageous business relationships with its customers.

74.     Defendants have acted with malice and conscious disregard for Plaintiff's rights and with the intent to frustrate and interfere with Plaintiff's reasonable expectations of continuing established relationships with its employees.

75.     Defendants have acted knowingly, willfully, maliciously and in conscious disregard of Plaintiff's rights.

76.     Defendants conspired and agreed to engage in the aforementioned tortious activities, engaged in overt acts toward that purpose, and intentionally participated in the

16

furtherance of a plan to engage in the aforementioned tortious activities, which resulted in significant damage to Plaintiff. As a result, defendants are jointly and severally liable for the damages created as a result of the conspiracy to engage in the aforementioned tortious conduct, and are subject to punitive damages for their conduct.

77.    By reason of the foregoing, Plaintiff is entitled to (1) equitable remedies including a permanent injunction, (2) compensatory damages in an amount to be determined at trial, (3) an award of punitive damages in an amount to be determined at trial, (4) an award of attorneys' fees and costs, and (5) such other relief as the Court may deem just and proper.

### AS AND FOR A SEVENTH CAUSE OF ACTION
### MISAPPROPRIATION OF TRADE SECRETS
(Against All Defendants)

78.    Plaintiff repeats and reasserts each and every allegation contained in the preceding paragraphs with the same force and effect as if fully set forth at length herein.

79.    Defendants misappropriated and conspired to misappropriate Plaintiff's valuable, trade secrets and other confidential and proprietary business information

80.    The trade secrets and other confidential and proprietary business information misappropriated by defendants include non-public information related to Plaintiff's proprietary product production methods, business operations, sales and marketing strategies, pricing data, confidential customer and supplier related information, contracts with customers and suppliers, and confidential work product created for Plaintiff's customers, which defendants have used and continue to use to their competitive advantage to the detriment of Plaintiff.

81.    The aforementioned data and information is not known to the general public, has great value to Plaintiff and would be invaluable to any of Plaintiff's competitors and prospective competitors.

82.     Plaintiff took specific measures to guard the secrecy of said information including physical precautions, limited access, corporate formalities, written notifications and written confidentiality agreements.

83.     Plaintiff expended significant time, effort and money to develop their trade secrets and confidential and proprietary business information.

84.     Defendants have a duty to protect and not to use or disseminate Plaintiff's trade secrets and confidential and proprietary business information.

85.     Defendants, without authorization, have disclosed and used, and continue to disclose and use, Plaintiff's trade secrets and confidential and proprietary business information in breach of their duty.

86.     These misappropriated trade secrets and confidential and proprietary business information have been and continue to be used by defendants in competition with Plaintiff to Plaintiff's detriment and to the financial benefit of defendants.

87.     Defendants conspired and agreed to engage in the aforementioned tortious activities, engaged in overt acts toward that purpose, and intentionally participated in the furtherance of a plan to engage in the aforementioned tortious activities, which resulted in significant damage to Plaintiff.  As a result, defendants are jointly and severally liable for the damages created as a result of the conspiracy to engage in the aforementioned tortious conduct, and are subject to punitive damages for their conduct.

88.     By reason of the foregoing, Plaintiff is entitled to (1) equitable remedies including a permanent injunction, (2) compensatory damages in an amount to be determined at trial, (3) an award of punitive damages in an amount to be determined at trial, (4) an award of attorneys' fees and costs, and (5) such other relief as the Court may deem just and proper.

## AS AND FOR A EIGHTH CAUSE OF ACTION
## CONVERSION
(Against All Defendants)

89.    Plaintiff repeats and reasserts each and every allegation contained in the preceding paragraphs with the same force and effect as if fully set forth at length herein.

90.    The acts described above constitute common law conversion of property, including valuable intellectual property, by Defendants.

91.    Upon information and belief, defendants were acting in concert to wrongfully convert without authorization Plaintiff's property, including Plaintiff's intellectual property.

92.    Defendants' acts of conversion of Plaintiff's property, including Plaintiff's intellectual property, have actually and proximately caused injury and damages to Plaintiff's business and business reputation.

93.    By reason of this conversion, Defendants have caused and continue to cause significant monetary and other injury to Plaintiff.

94.    Defendants conspired and agreed to engage in the aforementioned tortious activities, engaged in overt acts toward that purpose, and intentionally participated in the furtherance of a plan to engage in the aforementioned tortious activities, which resulted in significant damage to Plaintiff.  As a result, defendants are jointly and severally liable for the damages created as a result of the conspiracy to engage in the aforementioned tortious conduct, and are subject to punitive damages for their conduct.

95.    Defendants' tortious and egregious conduct was intended to wrongfully enrich Defendants and to deliberately and willfully injure Plaintiff in wanton disregard of Plaintiff's rights and Defendants' civil obligations.  Plaintiff is, therefore, entitled to an award of punitive damages in an amount to be determined at trial.

19

96.    By reason of the foregoing, Plaintiff is entitled to (1) equitable remedies including a permanent injunction, (2) compensatory damages in an amount to be determined at trial, (3) an award of punitive damages in an amount to be determined at trial, (4) an award of attorneys' fees and costs, and (5) such other relief as the Court may deem just and proper.

## AS AND FOR AN NINTH CAUSE OF ACTION
## UNFAIR COMPETITION
### (Against All Defendants)

97.    Plaintiff repeats and reasserts each and every allegation contained in the preceding paragraphs with the same force and effect as if fully set forth at length herein.

98.    Defendants have engaged in a campaign of tortious conduct that has wrongfully enabled them to gain an unfair competitive advantage over Plaintiff.

99.    The acts described above constitute unfair competition.

100.    By reason of this unfair competition, Defendants have caused and continue to cause significant monetary and other injury to Plaintiff.

101.    Defendants conspired and agreed to engage in the aforementioned tortious activities, engaged in overt acts toward that purpose, and intentionally participated in the furtherance of a plan to engage in the aforementioned tortious activities, which resulted in significant damage to Plaintiff.  As a result, defendants are jointly and severally liable for the damages created as a result of the conspiracy to engage in the aforementioned tortious conduct, and are subject to punitive damages for their conduct.

102.    Defendants' tortious and egregious conduct was intended to wrongfully enrich Defendants and to deliberately and willfully injure Plaintiff in wanton disregard of Plaintiff's rights and Defendants' civil obligations.  Plaintiff is, therefore, entitled to an award of punitive damages in an amount to be determined at trial.

103.    By reason of the foregoing, Plaintiff is entitled to (1) equitable remedies including a permanent injunction, (2) compensatory damages in an amount to be determined at trial, (3) an award of punitive damages in an amount to be determined at trial, (4) an award of attorneys' fees and costs, and (5) such other relief as the Court may deem just and proper.

**AS AND FOR A TENTH CAUSE OF ACTION**
**TRADE LIBEL**
(Against Defendant Giuffre)

104.    Plaintiff repeats and reasserts each and every allegation contained in the preceding paragraphs with the same force and effect as if fully set forth at length herein.

105.    Upon information and belief, in July 2006, Defendant Giuffre made statements to customers or prospective customers that Plaintiff did not pay employees their salary or commissions.

106.    Upon information and belief, in July 2006, Defendant Giuffre told at least one customer of Plaintiff that Plaintiff "doesn't know what they are doing" and that they "don't pay their employees." Upon information and belief, Defendant Giuffre has made other false and disparaging statements regarding Plaintiff's business and/or business integrity.

107.    Defendant Giuffre's false and disparaging statements regarding Plaintiff's business have actually and proximately caused injury and damages to Plaintiff's business and business reputation.

108.    The acts described above constitute trade libel of Plaintiff by Defendant Giuffre.

109.    By reason of this trade libel, Defendant Giuffre has caused and continues to cause significant monetary and other injury to Plaintiff.

110.    Defendants' tortious and egregious conduct was intended to wrongfully enrich Defendants and/or to deliberately and willfully injure Plaintiff in wanton disregard of Plaintiff's

rights and Defendants' civil obligations.  Plaintiff is, therefore, entitled to an award of punitive

damages in an amount to be determined at trial.

111.    By reason of the foregoing, Plaintiff is entitled to (1) equitable remedies including

a permanent injunction, (2) compensatory damages in an amount to be determined at trial, (3) an

award of punitive damages in an amount to be determined at trial, (4) an award of attorneys' fees

and costs, and (5) such other relief as the Court may deem just and proper.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff seeks judgment against Defendants:

a)  in favor of Plaintiff for each violation alleged in this complaint;

b)  enjoining Defendant from further violating the CFAA;

c)  enjoining Defendant Giuffre from further breaching his contractual obligations to
Plaintiff by continuing to work for Defendant Incremax in any capacity that involves the sales or
marketing of IT consulting services;

d)  permanently enjoining Defendant Giuffre from engaging in any business or employment,
on behalf of himself or any other person or entity, involving the sales or marketing of IT
consulting services within 50 miles of Plaintiff;

e)  enjoining Defendant Giuffre from further breaching his contractual obligations to
Plaintiff by continuing to solicit Plaintiff's customers in relation to IT consulting services;

f)  enjoining Defendant Giuffre from using any confidential and proprietary information and
trade secrets provided to him by Plaintiff or obtained by him from any laptop computer, desktop
computer, blackberry or other electronic device owned by Plaintiff and previously assigned to
Defendant Giuffre when he was employed by Plaintiff;

g)  enjoining Defendant Incremax from using any confidential and proprietary information
and trade secrets provided to him by Plaintiff or obtained by him from any laptop computer,

22

desktop computer, blackberry or other electronic device owned by Plaintiff and previously assigned to Defendant Giuffre when he was employed by Plaintiff;

h) enjoining Defendant Gerontianos from using any confidential and proprietary information and trade secrets provided to him by Plaintiff or obtained by him from any laptop computer, desktop computer, blackberry or other electronic device owned by Plaintiff and previously assigned to Defendant Giuffre when he was employed by Plaintiff;

i) directing Defendants to surrender the original and all copies, whether on paper or in a computer memory, file or disk, of any and all data and information obtained from electronic devices owned by Plaintiff;

j) directing Defendants to disclose the identities of any and all entities to whom Defendants have disclosed Plaintiff's confidential and proprietary business information and trade secrets;

k) enjoining Defendants from interfering with the prospective business relationships between Plaintiff and their current and prospective clients;

l) directing Defendants to provide an accounting to the Plaintiff of all profits realized by Defendants as a result of Defendants' wrongful conduct;

m) awarding Plaintiff monetary civil penalties for every violation of the CFAA;

n) awarding Plaintiff compensatory damages in an amount to be determined at trial;

o) awarding Plaintiff consequential damages in an amount to be determined and trial;

p) awarding Plaintiff punitive damages in an amount to be determined at trial;

q) awarding Plaintiff treble damages in an amount to be determined at trial;

r) awarding Plaintiff reasonable attorneys fees, costs and disbursements;

s)   awarding Plaintiff pre-judgment and post-judgment interest;

t)   awarding Plaintiff such other and further relief as the Court deems just and proper.


Dated:          December 11, 2006
                New City, New York

                              GREENWALD DOHERTY, LLP


                              By: _____
                                   Kevin M. Doherty, Esq.
                                   Attorneys for Plaintiff
                                   151 North Main Street, 4th Floor
                                   New City, New York 10956
                                   (845) 638-1943